IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

REBECCA M. DUNCAN            *

      Plaintiff,            *

vs.                         *
                             CASE NO. 3:05-CV-93 (CDL)
MADISON COUNTY, WESLEY J. NASH, *
Individually and as Chairman
of the Madison County Board of   *
Commissioners, MORRIS FORTSON,
Individually and as County       *
Clerk of Madison County; and
BRUCE SCOGIN, Individually,      *

      Defendants.            *


O R D E R

    The above captioned lawsuit arises from Plaintiff's employment as chief appraiser for the Madison County Office of Tax Assessors. Plaintiff asserts federal claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, the Equal Pay Act of 1963 ("EPA"), 29 U.S.C. § 206 *et seq.*, and 42 U.S.C. § 1983. Plaintiff also asserts state law claims for wage discrimination, O.C.G.A. §§ 34-5-1 to 5-7, defamation, O.C.G.A. § 51-5-1 to 5-12, and a common law claim for intentional infliction of emotional distress. Presently pending before the Court is Defendants' Motion for Summary Judgment (Doc. 26). For the following reasons, Defendants' motion is granted.

BACKGROUND

    The facts viewed in the light most favorable to Plaintiff are as follows:

## I.    Plaintiff's Employment and Salary Histories

Plaintiff Rebecca M. Duncan worked for the Madison County Office of Tax Assessors from March 16, 1998 until her termination on February 3, 2005.  In April 2002, the Madison County Board of Tax Assessors ("BOA") promoted Plaintiff to the chief appraiser's position.  At the time of her promotion, Plaintiff was classified as an Appraiser II.  The BOA conditioned Plaintiff's promotion on her passing the Appraiser III certification exam within one year of her hiring.  Plaintiff successfully passed that exam on June 26, 2002. (*See* Compl. Ex. H.)

Defendant Wesley Nash was the chairman of the Madison County Board of Commissioners ("BOC") during Plaintiff's tenure as chief appraiser.  Defendant Bruce Scogin was a member of the BOC, and Defendant Morris Fortson was the Madison County Clerk.  In June 2003, the BOC held a meeting to discuss the possibility of changing the pay classifications for certain Madison County employees.  Specifically, the BOC discussed the possibility of moving the chief appraiser position from a pay class 15 to a pay class 16.[1]  Although the BOC approved the change to the chief appraiser position, Plaintiff claims that she did not receive an increase in her salary.  According to Plaintiff, Defendant Fortson told her that the new pay classification was conditional, but never informed Plaintiff of the conditions she

_____

[1]Plaintiff's predecessor, Chuck Anglin, held the position of "Chief Appraiser/GIS Specialist" and was classified at a pay class 16.5.

had to meet.  Despite multiple inquiries throughout her employment as chief appraiser, Plaintiff never received a salary commensurate with a pay class 16.

## II.  The Mechell Salter Situation

In late 2003, Defendant Nash became aware of a problem, known as "sales chasing," in the Office of Tax Assessors.[2]  Defendant Nash held a meeting with the BOA, Defendant Fortson, and Plaintiff, and the parties "agreed at that time that [they] would go back, reevaluate [the problem] and have the Department of Revenue look at it, make sure [they] were doing [the appraisals] correctly[.]"  (Pl.'s Dep. 18:4-7, May 11, 2006.)  At that time, Defendant Nash "became convinced that [Plaintiff] was not as experienced as she needed to be in order to run the office[,]" and he "immediately increased the amount of oversight [his] office had over [Plaintiff]'s office." (Nash Aff. ¶ 4, Aug. 31, 2006.)  He claims that he "did not recommend at that time that [Plaintiff] be terminated; [he] recommended she get a supervisor, but that she remain at the same rate of pay . . . ." (*Id.*)  However, Defendant Nash spoke with John Bellew, chairman of the BOA, about his concerns regarding Plaintiff's job performance, and in early 2004, Defendant Nash met with Plaintiff to explain that "[he] really needed her office to be up to speed, running

---

[2]"Sales chasing" occurs when a piece of real property is appraised after a sale, but the values of the surrounding properties are not similarly reevaluated.

efficiently, effectively, and accurately[]" during his upcoming re-election year. (*Id.*; *see also* Pl.'s Dep. 50:17-51:2, 53:21-54:10.)

In an attempt to comply with Defendant Nash's instruction, Plaintiff investigated the discrepancies and determined that one of her employees, Mechell Salter, was responsible for the problems with sales chasing. From February to March 2004, Plaintiff and the BOA sought guidance from the Madison County personnel director about terminating Ms. Salter. On March 24, 2004, Plaintiff sent a letter to Defendants Nash and Fortson requesting that they attend a meeting with the BOA the following morning. (Compl. Ex. E.) Defendant Fortson responded that "'personnel problems' are addressed in the Personnel and Drug & Alcohol Policy of the [BOC,] . . . [and] it will not be necessary for Chairman Nash or myself to attend [the meeting] . . . ." (Compl. Ex. F.) Defendant Fortson attached to the letter a copy of the personnel policy, which Defendants contend clearly explains that the BOC chairman is the only person with authority to recommend termination of a Madison County employee.

On March 25, 2004, the BOA met to discuss Ms. Salter's termination. Plaintiff appeared in order to "answer[] questions by the [BOA] in regard to Ms. Salter's job performance." (Bellew Aff. ¶ 11, Sept. 21, 2006.) She informed the BOA that "Ms. Salter had changed the year of a Sale of real property[,] . . . [and] failed to inform [] Plaintiff or any member of the [BOA] of the change." (*Id.* at ¶ 6.) Although the BOA voted to terminate Ms. Salter's

4

employment, Defendant Nash immediately reassigned Ms. Salter to a position in his office.

## III. Plaintiff's Harassment Complaint

Defendant Nash remained convinced that the Office of Tax Assessors was in a state of disarray. In early April, he asked the BOC to have the Georgia Department of Revenue initiate an investigation of the Office of Tax Assessors and the BOA. Upset by the continued interference with her office, Plaintiff wrote a letter to the personnel director on April 15, 2004. Her letter states:

> I am formally lodging a harassment complaint against the Madison County Commissioners Office. I have been working under harassing conditions since November of 2003 with a few incidents prior to this. . . .
>
> I have been tormented by the county clerk of Madison County, the personnel coordinator of the county and the Chairman of the Board of Commissioners. They have been meddling in the assessor's office where politicians have no business meddling. . . . I cannot work to my potential under the circumstances that are going on. It is intimidating every day to come to work.
>
> . . .
>
> This is HARASSMENT.
>
> . . .
>
> I am an employee of this county and you are required by law and your own policy to protect me and my staff . . . .

(Compl. Ex. I.) The letter only addresses the alleged "harassment" surrounding Ms. Salter's termination and reassignment, and it fails to articulate that Plaintiff believed the harassment was motivated by her gender.

The personnel director did not investigate Plaintiff's harassment complaint, and Defendant Nash did not reduce his involvement with the Office of Tax Assessors. In October 2004, Defendant Bruce Scogin wrote an editorial article for the local Madison County newspaper in which he criticized Plaintiff and the BOA. The letter addressed the issues surrounding Ms. Salter's termination and characterized the Office of Tax Assessors as "a circus, orchestrated by none other than ringmaster John Bellew and as many clowns as he has been able to pull along with him." (Defs.' Mot. for Summ. J. Ex. N-3.) A few months later, on February 3, 2005, the BOC terminated Plaintiff's employment with Madison County. The grounds for Plaintiff's dismissal include: (1) insubordination; (2) demonstrated negligence, inefficiency, and incompetence as chief appraiser; (3) willfully making false statements about fellow employees; (4) violation of Madison County ordinances, administrative regulation, and departmental rules by dismissing Ms. Salter; (5) engaging in offensive conduct and using offensive language toward the public; and (6) engaging in conduct that reflects poorly on Madison County. (*See* Defs.' Mot. for Summ. J. Ex. O.)

On October 25, 2005, Plaintiff sued her employer, Defendant Madison County, for unlawful wage discrimination, harassment, and retaliation. She also sued Defendant Nash for violating the First and Fourteenth Amendments when he threatened to terminate her employment if she refused to support his re-election effort in 2004.

Plaintiff sued Defendants Nash and Fortson for intentional infliction of emotional distress, and brought a claim for defamation against Defendant Scogin. Defendants now seek summary judgment on each of these claims.

DISCUSSION

## I.    Summary Judgment Standard

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of showing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). This burden can be met by showing that the non-moving party will be unable to "establish the existence of an element essential to [the non-moving party's] case, and on which [the non-moving party] will bear the burden of proof at trial. *Id.* at 322.

Once the moving party has met its burden, the burden shifts to the non-moving party to show that there *is* a genuine issue of material fact. *Id.* at 324. A fact is material if it "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There is a genuine issue if the evidence would allow a reasonable jury to find for the non-moving party. *Id.* In other words, the inquiry is "whether the evidence presents a

sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

In determining if the parties have met their respective burdens, the Court may draw inferences from undisputed facts. The Court resolves "all reasonable doubts about the facts in favor of the non-movant, and draws all justifiable inferences in his favor." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). Additionally, "[i]f reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment." *Augusta Iron & Steel Works v. Employers Ins. of Wausau*, 835 F.2d 855, 856 (11th Cir. 1988).

## II.  Equal Pay Act

Plaintiff first asserts a claim against Defendant Madison County for wage discrimination under the EPA.[3]  In order to establish such a claim, a plaintiff must first establish a prima facie case of discrimination.  An employee demonstrates a prima facie case under the EPA by showing that the employer "pays different wages to employees of opposite sexes for equal work on jobs . . . [requiring] equal skill, effort, and responsibility, and which are performed under similar working conditions." *Irby v. Bittick*, 44 F.3d 949, 954

---

[3]The EPA provides that "[n]o employer . . . shall discriminate[] . . . between employees on the basis of sex by paying wages . . . at a rate less that the rate at which he pay wages to employees of the opposite sex . . . for equal work on jobs the performance of which requires equal skill, effort, and responsibility[.]"  29 U.S.C. § 206(d)(1).

(11th Cir. 1995) (internal quotation marks and citations omitted) (alterations in original); *see also Steger v. General Electric Co.*, 318 F.3d 1066, 1077-78 (11th Cir. 2003). Once the plaintiff establishes a prima facie case, the defendant employer "may avoid liability by proving by a preponderance of the evidence that the pay differences are based on '(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of productions; or (iv) . . . any other factor other than sex.'" *Steger*, 318 F.3d at 1078 (quoting 29 U.S.C. § 206(d)(1)) (alteration in original). These four justifications are affirmative defenses for which the defendant employer bears a heavy burden of proof. The employer "must show that the factor of sex provided *no basis* for the wage differential[.]" *Irby*, 44 F.3d at 954 (internal quotation marks and citation omitted) (emphasis in original); *Mulhall v. Advance Sec., Inc.*, 19 F.3d 586, 590 (11th Cir. 1994) (citations omitted). At the summary judgment stage, Defendant must establish that there are no genuine issues of material fact regarding the validity of its affirmative defense. If Defendant meets this burden, it is absolved of liability as a matter of law. *See Mulhall*, 19 F.3d at 590-91.[4]

---

[4]The Court notes the existence of Eleventh Circuit precedent that adds another step to this analysis. That step is described as follows: If the defendant employer meets its burden of establishing an affirmative defense, the plaintiff employee "must rebut the explanation by showing with affirmative evidence that [the defendant's explanation] is pretextual or offered as a post-event justification for a gender-based differential." *Steger,* 318 F.3d at 1078 (internal quotation marks and citation omitted). "If [the] plaintiff is able to create the inference of pretext, there is an issue which should be reserved for trial." *Irby*, 44 F.3d at 954. It is clear, however, that "[o]nce [Plaintiff] establishes a prima facie case of

A.   Prima Facie Case

In order to establish a prima facie case under the EPA, a plaintiff "need only demonstrate that the *jobs* at issue are substantially similar; [she] does not have to show that the skills or qualifications of the actual male and female employees holding the positions are also substantially equivalent." *Arrington v. Cobb County*, 139 F.3d 865, 876 (11th Cir. 1998) (internal citation omitted) (emphasis added).   The focus of the prima facie case is "solely on the primary duties of each job, not duties that are incidental or insubstantial[.]" *Id.* (internal quotation marks and citation omitted); *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1533 (11th Cir. 1992).   Additionally, "a plaintiff does not have to prove that two jobs are identical but rather must show that the skill, effort and responsibility required in the performance of the jobs are *substantially* equal." *Id.* (internal quotation marks and citation omitted) (emphasis in original).   However, "[t]he standard for determining whether jobs are equal in terms of skill,

_____

discrimination in pay based on sex, the success of [D]efendant['s] motion rests on [its] ability to prove an affirmative defense." *Mulhall*, 19 F.3d at 591.   Although a plaintiff must produce evidence sufficient to create a genuine issue of fact regarding the defendant's affirmative defense in order to survive summary judgment, the defendant still bears the burden of persuasion that such genuine issue does not exist. *See id.*, 19 F.3d at 591 ("[B]y moving for summary judgment under the EPA, defendants thrust before the court . . . the strength of their own defense and must establish that there is an absence of any issue for jury resolution."); *see also Buntin v. Breathitt Cty. Bd. of Educ.*, 134 F.3d 796, 800 n.7 (6th Cir. 1998) (criticizing *Irby*'s triple burden shifting analysis for requiring plaintiff to "bear[] the burden of *persuasion* regarding the affirmative defenses.") (emphasis in original).

effort, and responsibility is high." *Waters v. Turner, Wood & Smith Ins. Agency, Inc.*, 874 F.2d 797, 799 (11th Cir. 1989) (internal quotation marks and citation omitted).

Plaintiff alleges that Defendant Madison County violated the EPA by paying higher wages to Chuck Anglin, Plaintiff's immediate predecessor as chief appraiser. Defendants admit that Mr. Anglin, a male, held the position of chief appraiser and received higher wages than Plaintiff. (*See* Bellew Aff. ¶ 15; Nash Aff. ¶ 3.) However, Defendants contend that Mr. Anglin's position was not substantially similar to Plaintiff's because Mr. Anglin "served not only in the role of Chief Appraiser, but also a GIS Specialist." (Nash Aff. ¶ 3.) Plaintiff argues that she can still establish her prima facie case because "the function of GIS[] . . . is not a function of a chief appraiser[,]" and because she "performed the exact job description of chief appraiser as her predecessor." (Bellew Aff. ¶ 15.) Pretermitting whether Plaintiff has established a prima facie case, Defendants are entitled to summary judgment because they have established their affirmative defense as a matter of law.

B.  Affirmative Defense

Defendants assert a "factor other than sex" as their affirmative defense. *See* 29 U.S.C. § 206(d)(1). Specifically, Defendants assert that Mr. Anglin received higher wages because he performed additional duties that Plaintiff did not perform. John Bellew, chairman of the Madison County Board of Tax Assessors, submitted an affidavit

11

explaining that Mr. Anglin "sought [the] additional function [of GIS Specialist] and received a .5 [pay] grade higher than [P]laintiff[]" because "[s]he did not perform the function of GIS[.]" (Bellew Aff. ¶ 15.) Additionally, Defendant Nash stated that Mr. Anglin "was entitled to greater pay" because he "performed not only the same duties that Plaintiff did, he performed more, had more specialized education, had greater duties, greater responsibilities[.]"[5] (Nash Aff. ¶ 3.) Finally, Plaintiff admits that "[she] knew [she] should never be paid as the Chief Appraiser/GIS Specialist because [she] did not have that knowledge or background." (Pl.'s Dep. 14:10-22; 65:13-15.) "Although an employer may not rely on a *general practice* as a factor other than sex, . . . it may consider factors such as the unique characteristics of the same job; . . . an individual's *experience*, training, or ability; or . . . special exigent circumstances connected with the business." *Steger*, 318 F.3d at 1078 (internal quotation marks and citations omitted) (second and third alterations in original) (emphases in original).

Defendants have met their burden of producing evidence sufficient to establish their affirmative defense. Plaintiff has produced no evidence from which a reasonable jury could conclude that

---

[5]As chairman of the board of commissioners, Defendant Nash is "the lead County official with respect to the employment of County employees." (Nash Aff. ¶ 2.)

the pay disparity was based on Plaintiff's gender.[6] Since no genuine issues of material fact exist regarding Defendants' affirmative defense, Defendants are entitled to summary judgment on Plaintiff's EPA claim.

## III. Title VII

Plaintiff next claims that she was discriminated against because of her gender and that this discrimination is actionable under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* First, Plaintiff reasserts her claim that she received low wages as chief appraiser because of her gender. Second, Plaintiff argues that she was subjected to harassment that was so severe it created a hostile work environment. Finally, Plaintiff asserts a claim for retaliation under Title VII.

A. Disparate Treatment

Plaintiff argues that she was subjected to disparate treatment because of her gender. Specifically, Plaintiff claims that she received lower wages as chief appraiser than her male predecessor.

---

[6]Plaintiff's claim also fails under the three step analysis established by cases such as *Steger* and *Irby*. The record is clearly void of affirmative evidence that "the explanation [for the pay disparity] . . . is pretextual or offered as a post-event justification for a gender-based differential." *Steger*, 318 F.3d at 1078 (internal quotation marks and citation omitted). To the contrary, Plaintiff's own statements provide affirmative evidence that "[s]he did not perform the function of GIS," (Bellew Aff. ¶ 15), and that "[she] knew [she] should never be paid as the Chief Appraiser/GIS Specialist because [she] did not have that knowledge or background." (Pl.'s Dep. 14:10-22; 65:13-15.) Since Plaintiff failed to "create the inference of pretext," *Irby*, 44 F.3d at 954, she failed to create a genuine issue that Defendant Madison County violated the EPA. Therefore, under this expanded EPA analysis, Defendants are entitled to summary judgment on this claim.

Under Title VII, it is Plaintiff's burden to show by a preponderance of the evidence that Defendant Madison County intentionally engaged in unlawful discrimination. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07 (1993). Here, Plaintiff must rely on circumstantial evidence to show that Defendant Madison County paid her low wages because of her gender. In order to bring a claim for disparate treatment based on circumstantial evidence, the plaintiff must first establish a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). A plaintiff establishes her prima facie case of gender-based wage discrimination by producing evidence "that she is female and that the job she occupied was similar to higher paying jobs occupied by males." *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1529 (11th Cir. 1992). If the plaintiff can support a prima facie case, a presumption of discriminatory intent is created. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). The burden then shifts to the defendant to show a legitimate non-discriminatory reason for the alleged discriminatory behavior. *McDonnell Douglas*, 411 U.S. at 802; *Rojas v. Florida*, 285 F.3d 1339, 1342 (2002).[7] If the defendant carries this burden, the presumption of discrimination is rebutted. *Burdine*, 450 U.S. at 255. However, the plaintiff can still defeat summary judgement by presenting evidence sufficient to create a jury

---

[7]The employer's burden under Title VII is a burden of production in contrast to the employer's burden under the EPA which is a burden of persuasion. *Mulhall,* 19 F.3d at 592, FN 12.

question as to whether the proffered legitimate non-discriminatory reason is merely pretext for a discriminatory decision. *McDonnell Douglas*, 411 U.S. at 804; *Rojas*, 285 F.3d at 1342.

As with her claim under the EPA, the Court will assume, without deciding, that Plaintiff established her prima facie case of wage discrimination under Title VII. Thus, the burden shifts to Defendant Madison County to articulate a legitimate, non-discriminatory reason for the challenged action. *Wilson*, 376 F.3d at 1087. The defendant "need not persuade the court that [it was] actually motivated by the proffered reasons." *Burdine*, 450 U.S. at 254. Instead, it must simply articulate a legitimate nondiscriminatory reason for its decision. *Id.*

Defendant Madison County clearly articulated that Plaintiff's predecessor, Chuck Anglin, received higher wages because he performed additional duties as a chief appraiser/GIS specialist that Plaintiff did not perform. Therefore, the burden shifts back to Plaintiff to show that the articulated reasons are mere pretext for discrimination. *Burdine*, 450 U.S. at 256; *Wilson*, 376 F.3d at 1090. To satisfy her burden, Plaintiff must present evidence "sufficient to demonstrate a genuine issue of material fact as to the truth or falsity of the employer's legitimate, nondiscriminatory reasons." *Schoenfeld v. Babbit*, 168 F.3d 1257, 1269 (11th Cir. 1999). Since Plaintiff admits that "[she] knew [she] should never be paid as the Chief Appraiser/GIS Specialist because [she] did not have that

knowledge or background[,]" (Pl.'s Dep. 14:10-22; 65:13-15), she failed "to demonstrate a genuine issue of material fact as to the truth or falsity of [Defendant Madison County]'s legitimate, nondiscriminatory reasons[]" for the pay disparity. *Schoenfeld*, 168 F.3d at 1269. Accordingly, Defendant Madison County is entitled to summary judgment on Plaintiff's Title VII disparate treatment claim.[8]

B. Hostile Work Environment[9]

Plaintiff also claims that she was subjected to a sexually hostile work environment. For a hostile work environment claim to survive summary judgment, the plaintiff must first establish a prima facie case of a hostile work environment. Therefore, the plaintiff must show: (1) that the plaintiff belongs to a protected group;

---

[8]In her response brief, Plaintiff argues that she "was treated differently as a direct result of her gender than her male predecessor." (Pl.'s Br. in Opp. to Defs.' Mot. for Summ. J. 6 [hereinafter "Pl.'s Br."].) Although Plaintiff outlines various examples of alleged unfavorable treatment, the only disparate treatment claim that appears on the face of her EEOC Complaint is a claim for wage discrimination. "[J]udicial claims are allowed [only] if they 'amplify, clarify, or more clearly focus' the allegations in the EEOC complaint, . . . [and] new acts of discrimination are inappropriate." *Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277, 1279 (11th Cir. 2004). Thus, to the extent Plaintiff bases her discrimination claim on an alleged adverse employment action other than disparate pay, Defendant Madison County is entitled to summary judgment. *See id.* ("The purpose of the exhaustion requirement 'is that the [EEOC] should have first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts.'").

[9]Although Defendant contends that Plaintiff failed to file an EEOC charge of discrimination within 180 days of "the alleged unlawful employment practice," 42 U.S.C. § 2000e-5(e)(1), the record is clear that "Plaintiff's hostile work environment claim is memorialized in her April 15, 2004 administrative grievance" and that Plaintiff first filed a charge of discrimination on October 6, 2004. (Br. in Supp. of Defs.' Mot. for Summ. J. 13-14 [hereinafter "Defs.' Br."]; *see also* Compl. Ex. A.)

(2) that the plaintiff was subjected to unwelcome harassment;
(3) that the harassment complained of was based on her gender;
(4) that "the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) [that the harassment is] a basis for holding the employer liable." *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999) (internal citation and footnote omitted). Assuming, without deciding, that Plaintiff produced evidence to establish the first two elements of her prima facie case, Plaintiff cannot survive summary judgment on her claim for a hostile work environment because the harassment complained of was not sufficiently severe or pervasive. Furthermore, and perhaps more importantly, Plaintiff failed to produce any evidence that the alleged harassment was gender-based, or that Defendant Madison County is properly liable for such harassment under Title VII.[10]

---

[10]According to Plaintiff,

> [Her] letter of April 15, 2004 asserts that she was subject to an abusive working environment[,] . . . [and] that this is based upon her gender and her harassers are male and in a superior position of authority. And finally the harassment did effect [sic] her terms of employment[ because t]he defendants denied her pay increases and finally terminated the plaintiff.

(Pl.'s Br. at 9.) First, the "letter of April 15, 2004" makes no mention whatsoever of the fact that Plaintiff believed that she was harassed because she is female. (*See generally* Compl. Ex. I; Defs.' Mot. for Summ. J. Ex. M.) Second, there is no evidence from which "'a reasonable person would find [Plaintiff's work environment] hostile or abusive[.]'" *Mendoza*, 195 F.3d at 1245-46 (citation omitted). Mr. Bellew, the former chairman of the Madison County Board of Tax Assessors, "notice[d] that the County Clerk [Defendant Fortson] treated [P]laintiff differently from her predecessor, he was more hostile, intimidating, abusive and demanding of

Consequently, Defendant Madison County is entitled to summary judgment on this claim.

## IV.  Retaliation

Plaintiff's final claim under Title VII is a claim for retaliation.  As in the disparate treatment and hostile work environment contexts, the plaintiff must begin by establishing a prima facie case of retaliation.  If the plaintiff establishes a prima facie case, the defendant then has the burden of articulating a legitimate, non-discriminatory reason for the challenged action. The plaintiff can then defeat summary judgment by creating a question of fact as to whether the defendant's reason is merely pretext for discrimination.  *Holifield v. Reno*, 115 F.3d 1555, 1566 (11th Cir. 1997) (citations omitted).  Plaintiff claims that she was both harassed and terminated "because she disagreed with discriminatory practices of the [D]efendants."[11]  (Pl.'s Br. at 11.)  Although it is

_____

[P]laintiff.  He did not treat [P]laintiff in a professional manner, but one of condescension and contempt."  (Bellew Aff. ¶ 14.)  Additionally, two of Plaintiff's former subordinates witnessed a conversation between Plaintiff and Defendant Nash in which he "flung his hands out and said to [Plaintiff], 'I don't [care] about YOU, I don't [care] about this OFFICE, I don't [care] about ANYTHING! I want this to stop!!!!!'"  (Compl. Ex. K, L.)  Finally, Plaintiff contends that Defendants inappropriately and offensively abbreviated the words "Tax Assessors Office" on a sign at the front of the building.  Clearly, this conduct is not "sufficiently severe or pervasive to alter the terms and conditions of [Plaintiff's] employment and create a discriminatorily abusive working environment[.]"  *Mendoza*, 195 F.3d at 1245-46.

[11]In her brief in opposition to Defendants' motion, Plaintiff claims that Defendant Madison County "retaliated against her both pre and post termination because she disagreed with [its] discriminatory practices . . . ."  (Pl.'s Br. at 11.)  However, there is nothing in Plaintiff's EEOC charge to provide notice of the fact that she intended to rest her

not entirely clear to which "discriminatory practices" Plaintiff refers, the most reasonable interpretation of her argument is that Defendants retaliated against her because of her April 15, 2004 letter on harassment and because of her inquiries regarding her low wages.[12]

As previously noted, Plaintiff must begin by presenting evidence sufficient to establish her prima facie case. In order to establish a prima facie case of retaliation, a plaintiff must show (1) that she engaged in statutorily protected activity, (2) that she suffered an adverse employment action, and (3) that the adverse employment action is causally related to the protected activity. *Cooper v. Southern*

---

retaliation claim on any of Defendant's post-termination conduct. (*See* Compl. Ex. A.) Thus, to the extent Plaintiff relies upon any of Defendant's post-termination conduct, her claim is barred by her failure to exhaust her administrative remedies with the EEOC. *See Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 460, 466 (5th Cir. 1970) ("[T]he filing of a charge of discrimination with the EEOC is a condition precedent to the bringing of a civil action under Title VII[,]" and "the 'scope' of the judicial [action] is limited to the 'scope' of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.") (citations omitted).

[12]Plaintiff's EEOC charge of discrimination states: "On April 15, 2004, I made a formal complaint to Human Resources regarding my wage increase. . . . On February 3, 2005, I was discharged." (Compl. Ex. A.) It is clear from this statement that Plaintiff intended to rely on her April 15, 2004 letter as a basis for Defendant's retaliation. However, instead of addressing Plaintiff's wage concerns, this letter actually complains of the alleged harassment by Defendants Nash and Fortson. Neither Plaintiff's Complaint nor her brief in opposition to summary judgment further clarify which of Plaintiff's "protected activities" form the basis of Defendant's alleged retaliation. The Court is confident that Plaintiff's EEOC charge provides Defendant with adequate notice that Plaintiff intended to rely on both the April 15, 2004 letter, which complains of alleged harassment, and her wage related concerns. Accordingly, the Court will assume, in Plaintiff's favor, that she is arguing that both of these activities are "protected" under Title VII.

19

Co., 390 F.3d 695, 740 (11th Cir. 2004) (*quoting Meeks v. Computer Assocs. Int'l*, 15 F.3d 1013, 1021 (11th Cir. 1994)).  Plaintiff claims that she engaged in statutorily protected activity when she complained about her low wages and the alleged harassment by Defendants Nash and Fortson.  Defendants argue that neither of these activities constitute "protected activity" because none of Plaintiff's statements or complaints address "unlawful employment practices" as that term is defined by Title VII.

In order for Plaintiff to show that her statements or complaints constitute statutorily protected activity, she "must prove both (1) a subjective, good-faith belief that [Defendant Madison County] engaged in an unlawful employment practice and (2) that her belief was objectively reasonable." *Tatt v. Atlanta Gas Light Co.*, 138 F. App'x 145, 147 (11th Cir. 2005) (*citing Little v. United States Techs., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997)).  Put differently, an employee's statements constitute "protected activity" only if they reflect an objectively reasonable, subjective belief that the employer engaged in an unlawful employment practice.  Title VII defines "unlawful employment practices" as discrimination, harassment, or retaliation "because of . . . race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2 to e-3.  Thus, if an employee complains about discrimination, harassment, or retaliation that was motivated by something *other than* race, color, religion,

sex, or national origin, that employee has not engaged in activity that is protected under Title VII.

Here, none of Plaintiff's statements or complaints constitute "protected activity" under Title VII. First, with respect to her complaints about low wages, the record is clear that Plaintiff made those complaints because she believed she should receive wages commensurate with her elevated pay classification. There is nothing in the record to show that Plaintiff complained because (1) she believed that her wages were lower than those paid to male employees or (2) Defendants were motivated by Plaintiff's gender in refusing to increase her pay. In short, there is no evidence to support the contention that Plaintiff subjectively believed that Defendants engaged in unlawful, gender-based wage discrimination. *See Tatt*, 138 F. App'x at 147; *Little*, 103 F.3d at 960. Likewise, with respect to her complaint about harassment, there is no evidence to show that Plaintiff subjectively believed that the harassment complained of was the type of harassment Title VII forbids. Plaintiff's letter of April 15, 2004 clearly articulates her belief that Defendants Nash and Fortson engaged in harassing conduct, but it does not demonstrate that Plaintiff believed that this harassment violated Title VII—i.e., that Defendants Nash and Fortson were harassing Plaintiff because of her gender. Plaintiff failed to provide any evidence that she engaged in statutorily protected activity, and thus has failed to

establish her prima facie case of retaliation under Title VII. Accordingly, the Court grants summary judgment on this claim.

**IV.  Section 1983**

Plaintiff also asserts § 1983 claims against Defendant Madison County and Defendant Nash, alleging that she was terminated from her position as chief appraiser in retaliation for engaging in her First Amendment right to free speech.  Specifically, Plaintiff contends that she was terminated for her refusal to support Defendant Nash in his re-election campaign.  According to Plaintiff, "Chairman Nash in January 2004 directly threatened [her] position[] if she did not support his candidacy in his re-election effort . . . ."  (Compl. ¶ 51.)  Defendants seek summary judgment on the basis that "Plaintiff has testified succinctly that what is alleged in the Complaint never happened."  (Defs.' Br. at 5 (emphasis in original).)

In order for a public employee to establish a claim for First Amendment retaliation, that employee must show that:

> (1) the employee's speech is on a matter of public concern;
> (2) the employee's First Amendment interest in engaging in the speech outweighs the employer's interest in prohibiting the speech to promote the efficiency of the public services it performs through its employees; and (3) the employee's speech played a 'substantial part' in the employer's decision to demote or discharge the employee.

*Battle v. Bd. of Regents*, 468 F.3d 755, 760 (11th Cir. 2006) (citation omitted).  Defendants argue that there is no evidence in the record to support Plaintiff's argument that her refusal to provide political support played a "substantial part" in her

22

termination decision.  Additionally, Defendants point to specific testimony in Plaintiff's deposition in which she admits (1) that Defendant Nash never threatened her job and (2) that Defendant Nash's statements in the January 2004 meeting simply addressed his desire to fix the problems within the Tax Assessors Office.  (*See* Pl.'s Dep. 50:17-51:2, 53:21-54:10.)  Plaintiff did not respond to Defendants' motion with respect to this claim, and there is no evidence from which a reasonable jury could conclude that Plaintiff was terminated in retaliation for her refusal to provide political support to Defendant Nash.  Since Plaintiff failed to present evidence that Defendants violated her First Amendment rights, the Court grants summary judgment on her claim under 42 U.S.C. § 1983.[13]

CONCLUSION

For the aforementioned reasons, the Court grants Defendants' Motion for Summary Judgment (Doc. 26) as to each of Plaintiff's federal law claims.  Specifically, the Court grants Defendants' motion as to Plaintiff's claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, the Equal Pay Act of 1963,

---

[13]Plaintiff also contends that "Defendant [Madison] County and Defendant Nash have deprived [her] of her right to . . . substantive due process as guaranteed by the Fourteenth Amendment to the Constitution of the United States." (Compl. ¶ 54.)  The Complaint does not identify *which* of Plaintiff's substantive due process rights Defendants allegedly violated, and Plaintiff also failed to respond to Defendants' motion with respect to this claim.  Since there is no evidence in the record to support Defendants' alleged violation of the Fourteenth Amendment, they are entitled to summary judgment on Plaintiff's substantive due process claim.

29 U.S.C. § 206 *et seq.*, and 42 U.S.C. § 1983. Since these rulings dispose of all of Plaintiff's federal law claims, and since federal question jurisdiction is the only alleged basis for jurisdiction, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims, which are hereby dismissed without prejudice.

IT IS SO ORDERED, this 27th day of September, 2007.


S/Clay D. Land
CLAY D. LAND
UNITED STATES DISTRICT JUDGE